1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

**MERLE INNOVATIONS, INC.,**

         Plaintiff,

         v.

**INTEL CORPORATION and
APPLE INC.,**

         Defendants.

No. _____

COMPLAINT FOR PATENT
INFRINGEMENT

**JURY TRIAL DEMANDED**

     Plaintiff Merle Innovations, Inc. ("Merle" and/or "Plaintiff") hereby submits this Complaint for Patent Infringement against Defendant Intel Corporation ("Intel") and Defendant Apple Inc. ("Apple") (together, the "Defendants") and states as follows:

<u>**NATURE OF THE ACTION**</u>

    1.    Defendants Intel and Apple have each infringed and continue to infringe U.S. Patent No. 8,547,177 ("the '177 Patent"), the inventions in which were developed at the University of Washington.  A copy of the '177 Patent is included herewith as **Exhibit 1**.  Merle seeks a judgment of, and relief for, Defendants' infringement.

<u>**THE PARTIES**</u>

    2.    Plaintiff Merle is the owner by assignment of all rights, title and interest in and to the '177 Patent, which was assigned to Merle by the patent's original assignee, the University of Washington.  Merle was founded in September 2017 by Dr. Jeffrey Walling and Dr. Sangmin

Complaint for Patent
Infringement

- 1 -

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

Yoo, who are named inventors on the '177 Patent and both earned their PhDs from the University of Washington. Merle is a corporation organized and existing under the laws of Delaware, with its principal place of business located in Blacksburg, Virginia.

3. The University of Washington ("UW") is an interested third party. UW's main campus is located at 1410 NE Campus Pkwy, Seattle, Washington, 98195. The '177 Patent inventions were developed at UW by Merle's founders, Dr. Walling and Dr. Yoo. Specifically, at the time of the '177 Patent inventions, Dr. Walling was a postdoctoral research associate at UW, and Dr. Yoo was a doctoral graduate student at UW. Additionally, Dr. David Allstot, the patent's third named inventor, was a UW professor at the time of the '177 Patent inventions. As such, UW was the original assignee of the '177 Patent, and UW remained the owner of the '177 Patent until it assigned the patent to Merle. UW and Merle are parties to a Patent Transfer Agreement effectuating the foregoing assignment.

4. Defendant Intel is a corporation organized and existing under the laws of Delaware, with its principal place of business located at 2200 Mission College Boulevard, Santa Clara, California 95054. Intel has multiple regular and established places of business in this District, including at 925 4th Avenue 2270, Seattle, Washington 98104; and 2700 156th Avenue NE, Suite 125, Bellevue, Washington 98007.

5. Defendant Apple is a corporation organized and existing under the laws of California, with its principal place of business located at 1 Apple Park Way, Cupertino, California 95014. Apple has multiple regular and established places of business in this District, including at 333 Dexter Ave N, Seattle, Washington 98109; Two Union Square, 601 Union St. #4400, Seattle, Washington 98101; 2651 NE 49th St, Seattle, Washington 98105; 213 Bellevue Square, Bellevue, Washington 98004; 3000 184th Street S.W., Lynnwood, Washington 98037; 801 Southcenter Mall, Tukwila, Washington 98188; and 4502 S Steele Street, Tacoma, Washington 98409.

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338, as this action arises under the patent laws of the United States (35 U.S.C. §§ 1 *et seq.*).

7.     Each Defendant is subject to this Court's personal jurisdiction consistent with the principles of due process and/or the Washington Long Arm Statute.

8.     Personal jurisdiction exists generally over the Defendants because each Defendant has sufficient minimum contacts and/or has engaged in continuous and systematic activities in the forum as a result of business conducted within Washington, including in this District.  Personal jurisdiction also exists over each Defendant because each, directly or through subsidiaries, makes, uses, sells, offers for sale, imports, advertises, makes available, and/or markets products and/or services within Washington, including in this District, that infringe one or more claims of the '177 Patent.  Further, on information and belief, Defendants have placed or contributed to placing infringing products and/or services into the stream of commerce knowing or understanding that such products and/or services would be sold and used in the United States, including in this District.

9.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)-(c) and/or 1400(b), including because each Defendant has committed acts of infringement in this District and has regular and established places of business in this District.  By way of example and without limitation, each Defendant makes, uses, sells, offers to sell, and/or imports products that are accused of infringing the '177 Patent into and/or within this District, and each Defendant maintains a permanent and/or continuing presence within this District.

10.     Additionally, as it pertains to this litigation, this District has a local interest in having this dispute decided at home, as the '177 Patent inventions were developed at the University of Washington, which is located at 1410 NE Campus Pkwy, Seattle, Washington, 98195.  UW was the original assignee of the '177 Patent until UW assigned the patent to Merle.

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

UW and Merle are parties to a Patent Transfer Agreement concerning the foregoing assignment, and UW is an interested third party in connection with this litigation.

11.     Further, Defendants Intel and Apple each maintain multiple regular and established places of business in this District, as set forth in Paragraph 5 above, which is incorporated by reference here.  By way of further example, Apple's website has an entire landing page dedicated specifically to "Careers at Apple" in "Seattle."  *See, e.g.*, https://www.apple.com/careers/us/work-at-apple/locations/seattle.html (last visited Sept. 19, 2025).  Apple also recently signed a new lease in 2025 to expand its Seattle footprint to an additional 193,000 square-foot building.  *See, e.g.*, https://www.geekwire.com/2025/apple-inks-giant-new-lease-for-193k-square-foot-office-in-seattle/ (last visited Sept. 19, 2025).  Apple also has at least five retail stores in this District, including at least Apple stores located at (1) 2651 NE 49th St, Seattle, Washington 98105; (2) 213 Bellevue Square, Bellevue, Washington 98004; (3) 3000 184th Street S.W., Lynnwood, Washington 98037; (4) 801 Southcenter Mall, Tukwila, Washington 98188; and (5) 4502 S Steele Street, Tacoma, Washington 98409.

12.     Defendants Intel and Apple have each solicited business in this District, have transacted business within this District, and have attempted to derive financial benefit from the residents of this District, including benefits related to their infringement of the '177 Patent.

13.     Defendants Intel and Apple are properly joined together as Defendants in this litigation under 35 U.S.C. § 299(a), including because they commonly and/or jointly make, use, sell, offer to sell, and/or import one or more of the same Accused Products, such that (1) at least one right to relief is asserted by Plaintiff Merle against Defendants Intel and Apple jointly, severally, and in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, selling, offering to sell, and/or importing into the United States of the same Accused Products, and (2) questions of fact common to both Defendants Intel and Apple will arise in this litigation.  For example, as will be discussed below, Defendant Intel for years designed and manufactured

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 4 -

infringing transceivers for Apple, which Apple included in multiple generations of infringing iPhones and other iOS products.  Additionally, as will be discussed below, Apple thereafter acquired the majority of Intel's phone modem business, making Apple the successor in interest to the Intel business unit that designed and manufactured infringing transceivers for Apple.

### THE '177 PATENT

14.    The '177 Patent was duly and legally issued on October 1, 2013, and is titled, "All-Digital Switched-Capacitor Radio Frequency Power Amplification."

15.    Merle is the assignee of all rights, title, and interest in and to the '177 Patent.

16.    Merle's founders, Dr. Jeffrey Walling and Dr. Sangmin Yoo, developed the '177 Patent inventions during their work as a postdoctoral research associate and doctoral graduate student at UW, respectively, together with UW professor Dr. David Allstot.  Dr. Walling, Dr. Yoo, and Dr. Allstot are the '177 Patent's named inventors.  UW was the original assignee of the '177 Patent until UW assigned the patent to Merle.

17.    The '177 Patent is the foundation for Merle's commercial operations.  The patent is directed to technology associated with "an improved power amplifier" architecture.  '177 Patent, Abstract.  While the patent notes that "[t]he architecture may be referred to as a Switched-Capacitor Radio Frequency Power Amplifier (SCPA)," *id.* at 2:29-31, it may also be referred to by other acronyms such as switched-capacitor digital power amplifier ("SC-DPA"), capacitive radio-frequency digital-to-analog converter ("capacitive RF-DAC"), and/or other similar terms.

18.    Generally speaking, the technology described in the '177 Patent improved upon prior radio frequency power amplifiers by, among other things, providing certain "Digital power amplifiers (DPAs)" with "a new DPA architecture that more accurately controls the amplitude of the DPA's signal by controlling charge transfer in a plurality of DPA stages, each stage including a storage element (e.g., a capacitor)."  *Id.* at 1:66 & 2:16-19.  Among other things, this architecture allows for radio frequency power amplifiers in which an "SCPA may be fabricated

Complaint for Patent
Infringement

- 5 -

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

with scale CMOS technology." *Id.* at Abstract. This is notable because, among other things, "Scaled CMOS technology enables cost-effective full integration of single-chip radio systems as a result of its ability to simultaneously process analog, digital, and radio frequency (RF) signals." *Id.* at 1:25-28. As the patent further explains, "[t]he scaling of the minimum feature size and power-supply voltage in CMOS has enabled MOSFETs to switch at increasing speeds with decreasing dynamic power consumption, resulting in higher energy efficiencies." *Id.* at 1:49-53. "As yet another example [of the technology's benefits], the architecture generally does not use space-intensive analog/mixed signal circuitry, can be sized appropriately based on the linearity requirements of a specific application, and, in contrast to most previous approaches, benefits from continued CMOS technology scaling." *Id.* at 3:33-38. These and other benefits make the '177 Patent's SCPA technology well-suited for radio frequency power amplifiers in small, battery-powered consumer electronic devices, such as smartphones and similar devices.

19.    For example, in a non-limiting embodiment the patent states that an SCPA can include a "plurality of stages 502, one of which is stage 502A," where "each stage includes storage element 506, switch 508, and selection circuit 510." *Id.* at 8:5-8. An annotated copy of an associated figure is reproduced below for reference:

Complaint for Patent
Infringement

- 6 -

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

'177 Patent at Fig. 5 (colored annotations added).

20.    In the example embodiment above, the patent explains that "[t]he switch may be configured to (a) receive the selection signal from the selection circuit, (b) select an input signal based on the received selection signal from a plurality of input signals, and (c) output the selected input signal to the storage element." *Id.* at 2:40-44.  The "storage element" may be, for example, "a capacitor" (hence the term, "switched-capacitor power amplifier" or "SCPA"). *Id.* at 2:18-19.

21.    Further, in the foregoing example embodiment, the patent states that "[t]he output of each SCPA stage may then be coupled to a combination circuit that is configured [to] combine a respective output signal from each SCPA stage and thereby provide a combined output signal." *Id.* at 2:47-51.  Then, "the combined output signal provided by [the]

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

combination circuit" may be filtered by a "matching network" to provide the resulting output of

the power amplifier, which may for example be provided to a radio "antenna." *Id.* at 6:6-8.



'177 Patent at Fig. 5 (colored annotations added).

22.     As will be discussed further in below, Defendants themselves have recognized

the '177 Patent's SCPA technology as being a groundbreaking development in the field of radio

frequency power amplifiers.  As one Senior Principal Engineer at Intel exclaimed in writing in

2010: "This is certainly one of the most important breakthroughs I've seen in recent times."

Email from Stewart Taylor (Intel) to Dr. David Allstot ('177 Patent inventor) (August 31, 2010).

23.     Likewise, as another Principal Engineer at Intel noted in writing: "The SCPA

was the disruptive technology that broke through the limitations of BW [bandwidth],

modulation quality and efficiency that were limiting us with the prior art in this space (envelope

tracking etc).  The fact that it naturally lends itself to process scaling is the icing on the cake."

Email from Ashoke Ravi (Intel) to Dr. Walling (Merle) (July 31, 2025).

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

24.     Moreover, as set forth below, Defendants have cited and discussed the '177 Patent inventions at length in multiple of their own published articles, as well as in several of their own later-filed patents (sometimes with, and sometimes without, attribution to the '177 Patent's inventors).

## WILLFUL INFRINGEMENT

25.     Even from publicly-available information alone, before any discovery has taken place, it is clear that Defendants' infringement has been willful, and based on actual copying of the '177 Patent inventions.  As will be shown, the evidence of willful infringement is extensive.

### Initial Disclosure To Intel (July 2010)

26.     Intel has known of the '177 Patent's inventions since at least July 2010, when named inventor Dr. Sangmin Yoo (and later co-founder of Merle) explicitly disclosed the inventions to Intel, along with the fact that the inventions were claimed in a then-pending University of Washington patent application.  Dr. Yoo was still a doctoral graduate student at UW at the time, and had recently begun work as an intern in collaboration with Intel engineers on a project relating to radio frequency power amplifiers.  During his work on that project, Dr. Yoo disclosed his SCPA inventions to the Intel engineers he was working with, along with the fact that the inventions were in the process of being patented by UW.  The Intel engineers in turn expressed interest in the inventions, including the possibility of Intel licensing the inventions from UW for use in future Intel products.  Dr. Yoo and the other '177 Patent inventors memorialized these communications with Intel in a number of emails around the same time, some examples of which are briefly highlighted below.

27.     For example, in an email between the three inventors dated July 13, 2010, inventor Dr. Yoo memorialized the following in reference to Intel engineers Benjamin Jann (to whom Dr. Yoo reported) and Ram Sadhwani (manager of the Intel team, to whom Benjamin Jann reported):

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

The team I'm working for is trying to find a way to build a polar transmitter w/o supply modulator for small output power level. ***I just disclosed a little bit of SCPA to 2 people who I am working for in Intel.*** I asked them to keep it confidential. ***They were interested in it and a little bit disappointed to know that it is patented.*** :) It seems that it will be hard for them to avoid the patent, while they are using SCPA technique. ***They are thinking about using the patent in the future, if this technique is promising.*** If we allow them to use SCPA technique, we also might be able to have another paper for low power SCPA for blue tooth power level.

Email from Dr. Yoo to Dr. Walling and Dr. Allstot (July 13, 2010) (emphasis added).

28.     Similarly, in another email between the '177 Patent inventors dated July 20, 2010, Dr. Yoo noted that Intel's focus on their SCPA inventions had intensified, with Intel expressing a desire to potentially license the inventions from UW for use in Intel products:

By the way, ***the manager of my team I work for in Intel wants to know if they can use this technique for their test chip for Bluetooth transmitter***. They wanted to find a polar PA architecture without supply modulator. However, ***they don't have any other option other than SCPA technique*** since outphasing technique, one of the research team Intel is working on, is too complicated and shows poor efficiency at backoff. ***If we say okay, then they will probably contact you or ask Intel's patent manager to contact UW patent office for possible license in the future***.

Email from Dr. Yoo to Dr. Walling and Dr. Allstot (July 20, 2010) (emphasis added).

29.     Shortly thereafter, the '177 Patent inventors informed UW administrators of Intel's expressed interest in potentially licensing their inventions.  For example, inventor Dr. Allstot, then a professor at UW, stated the following in a July 21, 2010 email to UW administrators:

Regarding our recent patent disclosure (with Sangmin Yoo and Jeff Walling and me), ***I received an inquiry from Intel yesterday and it appears that are interested in some kind of licensing arrangement***.

Email from Dr. Allstot to Patrick Shelby and John Tolomei (July 21, 2010) (emphasis added).

30.     Inventor Dr. Yoo separately sent a similar email to UW administrators a few days later on July 26, 2010, stating:

We disclosed a little bit of the Switched-Capacitor RF Power Amplification technique to a couple of Intel engineers.

***They are very interested in it and I think they will contact UW office***.

Email from Dr. Yoo to John Tolomei (July 26, 2010) (emphasis added).

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

31.    On August 31, 2010, to further explore the possibility of a potential patent license from UW to Intel, inventor Dr. Allstot emailed Stewart Taylor, a Senior Principal Engineer at Intel, stating:

> Hi Stewart: Thanks for taking the time to read our ISSCC paper and give us some very valuable feedback.
> . . . .
> Regarding this approach, we think it actually benefits from scaling because of the ability to make better switches. ***So, would you and some other colleagues at Intel be interested in collaborating on what could be the next generation of SCPAs?*** It would sure be nice to try out some of these ideas on an advanced process such as 45 nm. Let me know on that and we can start thinking about how that can happen. I will, of course, need to include Sangmin and Jeff in formulating these plans.

Email from Dr. Allstot to Stewart Taylor (Intel) (August 31, 2010) (emphasis added).

32.    Mr. Taylor responded via email the same day to express Intel's keen interest in the inventions. Moreover, in doing so, Mr. Taylor effusively praised the inventions as being "certainly one of the most important breakthroughs I've seen in recent times":

> Dave, Glad to help. ***Excellent results. This is certainly one the most important breakthroughs I've seen in recent times.*** Easy to understand as well, which I think is a benefit. ***My magic number for PA efficiency for switching PAs to be noticed and utilized has been 30% for OFDM modulation. You've hit that number.*** I'm starting to think about ways to extend and improve your work, as I'm sure all of you are doing as well. ***I would very much like to collaborate on this with you. I told Jeff I'd like to find a way to build a SCPA on 22nm.***

Email from Mr. Taylor (Intel) to Dr. Allstot (August 31, 2010) (emphasis added).

33.    Thereafter, additional emails memorialized discussions that inventor Dr. Yoo had with more Intel engineers, including for example Intel's Ofir Degani and Parmoon Seddighrad:

> One of the manager of Intel research in product group in Israel, ***Ofir Degani***, visited Oregon recently. He was a coauthor of Jeff's PWPM paper. He is working closely with Intel product group in US. ***He talked to me this afternoon and he seems to be very interested in the SCPA***. He said his team with our product team can give us access to TSMC 65nm as well as PCB fabrication. I think it would be a good way to implement our SCPA in other process. What do you think about this? ***In Intel lab, Parmoon is already working in PA and I heard from Parmoon that they already hired one more intern to work on PA.*** So it might be better to work with product group, if they don't have more internship position. ***Ofir Degani asked me if he can see our paper. Please, let me give him a hard copy.***

Email from Dr. Yoo to Dr. Walling and Dr. Allstot (Dec. 14, 2010) (emphasis added).

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

34.    These and other memorialized communications make clear that multiple Intel engineers (a) had knowledge of the '177 Patent's inventions from at least as early as July 2010, (b) knew the inventions were claimed by UW in a pending patent application, (c) praised the inventions as "one of the most important breakthroughs" in recent times, and (d) expressed Intel's interest in potentially licensing the inventions for use in Intel products.

### Subsequent Intel Publications

35.    Notwithstanding Intel's professed interest in using the '177 Patent's inventions, Intel did not obtain a license to the '177 Patent from UW.  Yet, despite its failure to obtain a patent license, Intel proceeded to incorporate the '177 Patent's inventions into numerous Intel products, willfully infringing the '177 Patent.

36.    Among other things, Intel's willful infringement of the '177 Patent is plainly evidenced by multiple subsequent industry publications by Intel engineers.  Notably, after the Merle inventors filed the 2010 provisional patent application that ultimately led to issuance of the '177 Patent, the Merle inventors also published a number of companion academic articles discussing the same SCPA inventions.  Several example publications by the '177 Patent inventors are listed below as publications [1] through [4], together with example publications by Intel engineers listed as publications [a] through [d].

Example Publications by the '177 Patent Inventors:

[1] *A Switched-Capacitor RF Power Amplifier*, IEEE J. of Solid-State Circuits, Vol. 46, No. 12, at 2977 (Dec. 2011);

[2] *A Switched-Capacitor Power Amplifier for EER/Polar Transmitters*, 2011 IEEE Int'l Solid-State Circuits Conf. (ISSCC), at 24.3 (2011);

[3] *Digital Power Amplifier: A New Way to Exploit the Switched-Capacitor Circuit*, IEEE Commc'ns Mag., at 145 (Apr. 2012);

[4] *A Class-G Switched-Capacitor RF Power Amplifier*, IEEE J. of Solid-State Circuits, Vol. 48, No. 5, at 1212 (May 2013).

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

Example Publications by Intel Engineers:

[a] *A Linear Model of Efficiency for Switched-Capacitor RF Power-Amplifiers*, IEEE (2014);

[b] *Analysis and Design of a 1.1*dB-IL *Third-Order Matching Network for Switched-Capacitor PAs*, IEEE (2015);

[c] *A Digital Multimode Polar Transmitter Supporting 40MHz LTE Carrier Aggregation in 28nm CMOS*, 2017 IEEE ISSCC, at 13.2 (2017);

[d] *A 2.4GHz WLAN Digital Polar Transmitter with Synthesized Digital-to-Time Converter in 14nm Trigate/FinFET Technology for IoT and Wearable Applications*, 2017 IEEE ISSCC, at 13.6 (2017).

37.    The example publications by Intel engineers are particularly notable because they (a) repeatedly cite to and discuss publications by the '177 Patent inventors concerning the patented SCPA inventions, (b) expressly discuss Intel engineers implementing the '177 Patent inventions in Intel designs they were working on, and (c) further discuss the '177 Patent inventions in highly favorable terms indicating that the Intel engineers viewed the inventions as groundbreaking.

38.    For example, in Intel publication [a], the Intel authors devoted their introduction section to discussing publications [1] and [3] by the '177 Patent inventors concerning their SCPA inventions.  Notably, the Intel authors explicitly admitted that "a SCPA has been adopted" in Intel's designs, and they presented Intel's implementation of "the SCPA at full scale," all while repeatedly citing the '177 Patent inventors for these contributions (citations to which are noted below in blue):

A Linear Model of Efficiency for ***Switched-Capacitor RF Power Amplifiers***
. . .
*Abstract*—In this paper, a linear model for intrinsic power and efficiency in ***Radio-Frequency Switched-Capacitor Power Amplifiers (SCPA)*** is presented. . . .

I. INTRODUCTION

DESIGN solutions for personal mobile communications enable small battery operated devices with robust, powerful, efficient and cost-effective transmitters. ***Traditional transmitter (TX) lineups (see Fig. 1a) are analog intensive [1], and do not benefit from CMOS technology scaling. The introduction of high dynamic range digital-to-analog converter (DAC) running at RF frequency, a.k.a. RF-DAC, enables a digital intensive solution [1]***. The entire TX chain is

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 13 -

implemented by digital-like circuit blocks and strongly benefits from CMOS technology scaling, except for the off-chip analog Power Amplifier (PA) as shown in Fig.1b. *The next step . . . is to incorporate the PA in the mixed-signal output stage of the DAC [1]. A digital TX with no external PA has already been demonstrated . . . in [3] as sketched in Fig.1c, where a SCPA has been adopted*.

*This paper presents a linear model for the power and efficiency of the SCPA at full scale*. This model can be used to accurately size the output stage of this new class of circuits by means of simple equations. . . .

*A SCPA is a Capacitive-DAC (C-DAC) capable of delivering high output power [3]*.

Intel Publication [a]: *A Linear Model of Efficiency for Switched-Capacitor RF Power-Amplifiers*, IEEE (2014) (citing '177 Patent inventor publications [1] and [3] where shown) (emphasis added).

39.    Similarly, in Intel publication [b], the Intel authors devoted their introduction section to discussing publications [1] and [4] by the '177 Patent inventors concerning their SCPA inventions.  In doing so, the Intel authors praised the '177 Patent inventions as being "innovative" and having "a powerful output stage" with "good efficiency" (citations again noted below in blue):

Analysis and Design of a 1.1*dB-IL* third-order
Matching Network for *Switched-Capacitor Pas*

*Abstract*—A Matching Network for a 1.1*V* **Switched Capacitor Power Amplifier** has been designed with a Bluetooth Application in mind. . . .

I. Introduction

*An innovative embodiment of the Digital Power Amplifier (DPA) circuit is the Switched-Capacitor RF Power Amplifier (SCPA). The SCPA [1] is a Capacitive Digital-to-Analog Converter (C-DAC) with a powerful output stage.* The SCPA is connected to a companion Matching Network (MN) providing both resonance for intrinsic C-DAC capacitance and impedance transformation. The design of the matching network is critical to achieve both required output power and high efficiency on typical 50Ω antenna load.
. . .
*The SCPA Matching Network can be implemented off-chip, e.g. [1]* . . . or on the DPA die. *The work in [4] shows that a MN for a Wifi application can be built on a single SCPA die operating at the required output power with good efficiency*. In this work, the focus is on a systematical analysis of the performance of the integrated MN that allows to select the MN parameters to maximize its efficiency for the desired output power level.

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 14 -

Intel Publication [b]: *Analysis and Design of a 1.1dB-IL Third-Order Matching Network for Switched-Capacitor PAs*, IEEE (2015) (citing '177 Patent inventor publications [1] and [4] where noted in blue) (emphasis added).

40.    Likewise, in Intel publication [c], the Intel authors discussed publication [2] by the '177 Patent inventors.  In doing so, the Intel authors praised the '177 Patent inventions as having "high power efficiency," and they specifically noted that "[m]ore than 30% power-added efficiency has been demonstrated" by the SCPA designs.  Moreover, the Intel authors admitted they were presenting an Intel "architecture based on" the '177 Patent inventions, while citing the '177 Patent inventors for these contributions (citations to which are noted in blue):

> ***More than 30% power-added efficiency has been demonstrated*** in a 20MHz polar TX based on a ***switched-capacitor digital PA [2]***. . . .

> ***This work introduces a digital polar transmitter architecture based on*** signed amplitude path and ***switched-capacitor RFDAC (C-RFDAC)*** to overcome the conventional bandwidth vs. signal quality limitations in polar TX. . . .

> ***The core of the AM path is a C-RFDAC as shown in Fig. 13.2.2. The C-RFDAC offers high power efficiency [2]*** and is inherently wideband: the D-to-A conversion is just done by a digital logic element, gating the LO signal depending on the digital AM input code. ***A high-resolution, low-noise implementation is presented here.***

Intel Publication [c]: *Analysis and Design of a 1.1dB-IL Third-Order Matching Network for Switched-Capacitor PAs*, IEEE (2015) (citing inventor publication [2]) (emphasis added).

41.    As another example, in Intel publication [d], the Intel authors again presented a design for a "digital PA with matching network," which they went on to admit "is based on the switched-capacitor architecture of" the '177 Patent inventions, while again citing the '177 Patent inventors for these contributions (citations to which are again noted below in blue):

> ***The proposed transmitter leverages*** a polar architecture with synthesized digital-to-time converter (DTC) wideband phase modulator, an all-digital PLL and a ***digital PA with matching network*** implemented on a flip-chip package to enable single-chip integration in 14nm trigate/finFET technology for IoT and wearable SoCs. . . .
> ***The digital PA is based on the switched-capacitor architecture of [1]***.

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 15 -

1  Intel Publication [d]: *A 2.4GHz WLAN Digital Polar Transmitter with Synthesized Digital-to-*

2  *Time Converter in 124nm Trigate/FinFET Technology for IoT and Wearable Applications*, 2017

3  IEEE ISSCC, at 13.6 (2017) (citing '177 Patent inventor publication [1]) (emphasis added).

### Intel's Later-Filed '834 Patent (2015)

5      42.    Intel also improperly applied for and obtained its own later-filed patent, U.S.

6  Patent No. 9,490,834 ("the '834 Patent"), on a design implementing the '177 Patent's SCPA

7  inventions. Intel copied the '177 Patent inventions in its later-filed '834 Patent, with Intel even

8  going so far as to explicitly copy specific circuit diagrams from the '177 Patent nearly verbatim.

9  Intel did this without providing attribution to the '177 Patent inventors, and also without

10 informing the U.S. Patent and Trademark Office ("USPTO") of the existence of the earlier '177

11 Patent or any of the companion publications by the '177 Patent inventors discussed above.

12     43.    For example, below is a comparison of Figure 5 of the '177 Patent to Figure 4 of

13 the '834 patent, to which annotations have been added to identify overlapping circuit elements:



**Merle '177 Patent**
(Filed 2010, Issued 2013)

**Intel '834 Patent**
(Filed 2015, Issued 2016)

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 16 -

As shown, Figure 5 of the '177 Patent has at least 17 circuit elements replicated in Figure 4 of Intel's later-filed '834 patent. These figures also have very few if any non-overlapping elements. Moreover, in addition to the striking similarity of the circuit layouts, many of the specific labels are copied in Intel's figure verbatim, such as (1) "***Phase Input φ***"; (5) "***$B_5$-$B_2$***"; (6) "***$B_5$-$B_0$***"; and (7) "***$B_{in}(A)$-Envelope Input***." This congruity further evidences actual copying by Intel.

44.   Similar congruity can be seen when comparing additional circuit diagrams, such as Figure 6 of the Merle '177 Patent and Figure 5 of Intel's later-filed '834 Patent, which comparison again indicates at least 17 identical circuit elements as shown below:

**Merle '177 Patent**
(Filed 2010, Issued 2013)

**Intel '834 Patent**
(Filed 2015, Issued 2016)





**Figure 6**

**Figure 5**

45.   The purported inventors listed in Intel's '834 Patent include Intel engineers Stephan Leuschner, Michael Fulde, Daniel Sira, and Gerhard Knoblinger. Notably, each was also an author of one or more of Intel publications [a] through [d] discussed above, in which they cited and discussed the '177 Patent's inventions at length. Yet, despite their publicly-documented knowledge (as shown by their publications), these Intel engineers did not disclose the '177 Patent's inventions (including the '177 Patent itself, or any of its related publications) to the USPTO during the prosecution of the later-filed application that led to Intel's '834 Patent.

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 17 -

46.     Thus, not only did Intel improperly copy the '177 Patent's inventions, but it went even further and tried to obtain its own patent on the inventions it had copied, all while improperly withholding the '177 Patent and related publications from the USPTO to do so.

### Intel's Manufacture of Infringing Transceivers for Apple

47.     After copying the '177 Patent inventions, Intel proceeded to commercially implement those inventions at scale in a broad array of Intel products that include radio frequency transmitters or transceivers (including, for example, products in the fields of cellular, Wi-Fi, or other wireless connectivity) and were launched from at least 2016 onward.

48.     On information and belief based on Plaintiff's investigation to date, the Intel products that implemented the '177 Patent's SCPA inventions include radio frequency power amplifiers that are substantially the same as those described in Intel's later-filed '834 Patent, which as discussed above reflected infringing designs copied by Intel from the '177 Patent. Given Intel's copying, it should be unsurprising that, as is discussed below, the infringing Intel products practice every limitation, of all 20 claims, recited in the '177 Patent.

49.     For example, Defendant Intel for years designed and manufactured infringing radio frequency transceivers for Defendant Apple, which Apple included in multiple generations of infringing iPhones and other iOS products.  On information and belief based on Plaintiff's investigation to date, this joint infringement by Intel and Apple began with at least the iPhone 7 generation of iOS products launched by Apple in September 2016, for which Intel designed and manufactured infringing Intel PMB5750 (aka, Intel SMARTi5) radio frequency transceivers. Further, on information and belief based on Plaintiff's investigation to date, Intel continued designing and manufacturing infringing radio frequency transceivers for Apple for use in all subsequent iPhone and iOS products through at least the iPhone 11 generation of iOS products launched by Apple in September 2019, for which Intel designed and manufactured infringing Intel PMB5765 (aka, Intel SMARTi8) radio frequency transceivers.

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

**Apple's Acquisition and Continued Willful Infringement**

50.     Intel's design and manufacture of infringing radio frequency transceivers for Apple was a great commercial success—so much so that, in 2019, Apple made a play to acquire the relevant business unit from Intel.  Apple announced the acquisition in July 2019, stating:

> Apple and Intel have signed an agreement for Apple to acquire the majority of Intel's smartphone modem business.  Approximately 2,200 Intel employees will join Apple, along with intellectual property, equipment and leases.  The transaction, valued at $1 billion, is expected to close in the fourth quarter of 2019, subject to regulatory approvals and other customary conditions, including works council and other relevant consultations in certain jurisdictions.

> Combining the acquired patents for current and future wireless technology with Apple's existing portfolio, Apple will hold over 17,000 wireless technology patents, ranging from protocols for cellular standards to modem architecture and modem operation.  Intel will retain the ability to develop for non-smartphone applications, such as PCs, internet-of-things devices and autonomous vehicles.

Apple Press Release: *Apple to Acquire The Majority of Intel's Smartphone Modem Business* (July 25, 2019), *available at* http://www.apple.com/newsroom/2019/07/apple-to-acquire-the-majority-of-intels-smartphone-modem-business/ (last visited Sept. 19, 2025).

51.     Apple's acquisition of the majority of Intel's smartphone business ultimately closed in December 2019, as was reported at the time by Intel:

> Intel Corporation today announced it has completed the sale of the majority of its smartphone modem business to Apple.  This transaction, valued at $1 billion, was announced on July 25, 2019.  As previously disclosed, this transaction enables Intel to focus on developing technology for 5G networks while retaining the option to develop modems for non-smartphone applications, such as PCs, internet of things devices and autonomous vehicles.

Intel Press Release: *Intel Completes Sale of Smartphone Modem Business to Apple* (Dec. 2, 2019), *available at* https://www.intc.com/news-events/press-releases/detail/35/intel-completes-sale-of-smartphone-modem-business-to-apple (last visited Sept. 19, 2025).

52.     As a result of the 2019 acquisition, Apple became the successor in interest to the Intel business unit that copied and willfully infringed the '177 Patent's inventions.  That is, as a result of the business acquisition, Apple legally stepped into the shoes of Intel as it pertains to

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

the willful infringement committed by the acquired Intel business unit, such that Intel's knowledge of the '177 Patent and its willful infringement became attributable to Apple.

53. Additionally, it should further be noted that Apple has also had separate and independent knowledge of the '177 Patent inventions since at least as early December 6, 2018. For example, on that date, Apple cited a companion publication by the '177 Patent inventors in an information disclosure statement ("IDS") that Apple submitted in support of an Apple patent application, which ultimately issued as U.S. Patent No. 10,707,813 ("the '813 Patent"). Apple's later-filed '813 Patent, titled "High Efficiency Switching Power Amplifier," cites the companion publication by the '177 Patent inventors on the face of the patent itself. *See* '813 Patent, Other Publications (citing Sang-Min Yoo, et al., *A Class-G Switched-Capacitor RF Power Amplifier*, IEEE Journal of Solid-State Circuits, vol. 18, No. 5, May 2013, at 1212-24).

54. Further, after the 2019 acquisition, the acquired Intel business unit continued its acts of willful infringement operating within and as part of Apple. After the acquisition, Apple reportedly temporarily switched to using Qualcomm as its supplier of wireless connectivity solutions for a period of time. That shift by Apple was reportedly because Apple had tasked the acquired Intel business unit with building an in-house Apple wireless connectivity solution, which Apple hoped would eliminate its need to rely upon third-party suppliers for wireless connectivity. These efforts by Apple came to fruition with the 2025 launch of the iPhone 16e, which includes the C1 cellular modem as the first Apple in-house built wireless connectivity solution. For example, as was recently reported by Apple Insider:

> Apple has finally introduced its first in-house modem alongside iPhone 16e, the C1, marking a major shift in its hardware strategy.
>
> For years, Apple has relied on Qualcomm for iPhone modems, but that relationship has been winding down. The company took a big step toward independence in 2019 when it acquired Intel's smartphone modem business for $1 billion.
>
> That move set the stage for Apple to develop its own 5G modem, cutting out third-party suppliers and ensuring tighter hardware integration.

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

Apple Insider, *Apple's C1 Modem Signals the End of Its Qualcomm Dependence* (Feb. 19, 2025), *available at* https://appleinsider.com/articles/25/02/19/apples-c1-modem-signals-the-end-of-its-qualcomm-dependence (last visited Sept. 19, 2025).

55.    Following the C1, Apple also recently launched the C1X cellular modem, included in the iPhone Air. *See* https://www.apple.com/newsroom/2025/09/introducing-iphone-air-a-powerful-new-iphone-with-a-breakthrough-design (last visited Sept. 19, 2025) ("iPhone Air also features C1X, a new cellular modem designed by Apple. C1X is up to 2x faster than C1, and for the same cellular technologies, it is even faster than the modem in iPhone 16 Pro, while using 30 percent less energy overall. This makes the C1X the most power-efficient modem in an iPhone.").

56.    Further, Apple also recently launched the N1, included in its iPhone 17 and iPhone Air product lines. The N1 is "a new Apple-designed wireless networking chip that enables Wi-Fi 7, Bluetooth 6, and Thread." https://www.apple.com/newsroom/2025/09/apple-debuts-iphone-17/ (last visited Sept. 19, 2025).

57.    On information and belief based on Plaintiff's investigation to date, the Apple C1, C1X, and N1 include radio frequency power amplifiers substantially as described in Intel's later-filed '834 Patent, which reflects infringing designs copied from Merle's '177 Patent.

58.    Relatedly, as noted above, Apple's 2019 acquisition of the majority of Intel's smartphone modem business included, among other things, the transfer of certain related "intellectual property" from Intel to Apple. *See* Apple Press Release: *Apple to Acquire The Majority of Intel's Smartphone Modem Business* (July 25, 2019), *available at* http://www.apple.com/newsroom/2019/07/apple-to-acquire-the-majority-of-intels-smartphone-modem-business/ (last visited Sept. 19, 2025). As indicated in USPTO Assignment Database records, this 2019 transfer of intellectual property included, among other things, the assignment of Intel's later-filed '834 Patent from Intel to Apple, which as noted reflects infringing designs copied from Merle's '177 Patent. The assignment of the '834 Patent from Intel to Apple was

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 21 -

recorded in the USPTO Assignment Database on June 26, 2020, at Reel/Frame #053307/0500. As such, Intel's later-filed '834 Patent (which includes designs copied from Merle's '177 Patent) is now owned by Apple, the successor in interest to Intel's smartphone modem business.

<u>Intel's Continued Willful Infringement</u>

59.    As noted, although Intel sold the majority of its smartphone modem business to Apple in December 2019, the deal provided that "Intel will retain the ability to develop for non-smartphone applications, such as PCs, internet-of-things devices and autonomous vehicles." Apple Press Release: *Apple to Acquire The Majority of Intel's Smartphone Modem Business* (July 25, 2019), *available at* http://www.apple.com/newsroom/2019/07/apple-to-acquire-the-majority-of-intels-smartphone-modem-business (last visited Sept. 19, 2025); *see also, e.g.*, Intel Press Release: *Intel Completes Sale of Smartphone Modem Business to Apple* (Dec. 2, 2019), *available at* https://www.intc.com/news-events/press-releases/detail/35/intel-completes-sale-of-smartphone-modem-business-to-apple (last visited Sept. 19, 2025) (noting that Intel would be "retaining the option to develop modems for non-smartphone applications, such as PCs, internet of things devices and autonomous vehicles.").

60.    On information and belief based on Plaintiff's investigation to date, Intel has continued to willfully infringe the '177 Patent even after the 2019 Apple acquisition of the majority of Intel's smartphone modem business.  For example, among other things, Intel has continued to make infringing wireless connectivity solutions for non-smartphone applications, including but not limited to Intel's Wi-Fi 6 and later Wi-Fi connectivity solutions.

61.    For example, Intel's continued willful infringement of the '177 Patent in connection with Intel's Wi-Fi solutions was evidenced in a 2020 publication by Intel engineers, which admitted Intel was using the '177 Patent invention in Intel's Wi-Fi 6 solutions.  *See A Fully Integrated 27dBm Dual-Band All-Digital Polar Transmitter Supporting 160MHz for WiFi 6 Applications*, 2020 IEEE ISSCC, at 10.5 (2020) (admitting Intel's "WiFi 6 Applications"

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 22 -

incorporated "a switched-capacitor digital PA (SC-DPA)," while citing Intel publication [d] discussed above, which cited '177 Patent inventor publication [1]); *see also* ¶¶ 36 & 41, *supra*.

62.    Indeed, in connection with the foregoing 2020 Intel publication, the Intel authors also presented slides at the ISSCC 2020 conference regarding Intel's Wi-Fi 6 solutions, in which Intel credited its implementation of an "SC-DPA" to the '177 Patent inventors by name:



Ofir Degani et al., ISSCC 2020 Slides § 10.5: *A Fully Integrated 27dBm Dual-Band All-Digital Polar Transmitter Supporting 160MHz for WiFi 6 Applications*, at Slide 20 (emphasis added). As shown above, Intel's citation of "***S-M. Yoo, ISSCC 2011***" for the "***SC-DPA array***" included in Intel's infringing design was an explicit reference to the 2011 companion article [1] published by the '177 Patent inventors. *See* Sangmin Yoo et al., *A Switched-Capacitor RF Power Amplifier*, IEEE J. of Solid-State Circuits, Vol. 46, No. 12, at 2977 (Dec. 2011).

## ACCUSED PRODUCTS

63.    As referenced in this Complaint, the term "**Intel Accused Products**" includes, but is not limited to, at least the following:

(a)    All products that Intel makes, uses, sells, offers for sale, and/or imports, in and/or into the United States, that comprise, include, or otherwise make use of, one or

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 23 -

more switched-capacitor power amplifiers ("SCPAs"), which may alternatively be referred to as switched-capacitor digital power amplifiers ("SC-DPAs"), capacitive radio-frequency digital-to-analog converters ("capacitive RF-DACs"), and/or other similar terms.  On information and belief based on Plaintiff's investigation to date, non-limiting examples of Intel Accused Products include, but are not limited to: (a) products within at least the following families: PMB5750, PMB5757, PMB5762, PMB5765, SMARTi5, SMARTi6, SMARTi7, SMARTi8, Intel Wi-Fi 6 generation products, Intel Wi-Fi 6E generation products, Intel Wi-Fi 7 generation products, Intel Bluetooth 5.2 generation products, Intel Bluetooth 5.3 generation products, Intel Bluetooth 5.4 generation products, AX101, AX200, AX201, AX202, AX203, Wi-Fi 6 Desktop Kit, AX210, AX211, AX411, Killer AX1650, Killer AX1675, Killer AX1690, Killer AX1750, BE200, BE201, and BE202; and (b) any Intel product with an SCPA that is included or used in any of at least the following Apple product families: iPhone 7, iPhone 7 Plus, iPhone 8, iPhone 8 Plus, iPhone X, iPhone XS, iPhone XS Max, iPhone XR, iPhone 11, iPhone 11 Pro, iPhone 11 Pro Max.

(b)    All subsequent Intel products based on and/or incorporating pertinent portions of any SCPA architecture from any other Intel Accused Product, as well as any other Intel products that include any pertinent feature that is architected in, or operates in, materially the same manner as any other Intel Accused Product;

(c)    All wafers, chips, and packaged chips or components within the foregoing product families;

(d)    All Intel products hereafter identified as infringing the '177 Patent in Plaintiff's discovery responses or local rule disclosures in this litigation; and

(e)    All products, whether made by Intel, Apple, or a third party, that comprise, include, or otherwise make use of any Intel Accused Product; and

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

(f)     Any other Intel products that infringe any one or more asserted claims of the '177 Patent for analogous reasons to those disclosed by Plaintiff in this litigation for any Intel Accused Product, including without limitation any such prototypes, pre-production or engineering samples, or trial versions made, used or imported into the United States in the course of researching or developing the families identified above or subsequent generations of the same.

64.     As referenced in this Complaint, the term "**Apple Accused Products**" includes, but is not limited to, at least the following:

(a)     All products that Apple makes, uses, sells, offers for sale, and/or imports, in and/or into the United States, that comprise, include, or otherwise make use of, one or more switched-capacitor power amplifiers ("SCPAs"), which may alternatively be referred to as switched-capacitor digital power amplifiers ("SC-DPAs"), capacitive radio-frequency digital-to-analog converters ("capacitive RF-DACs"), and/or other similar terms.  On information and belief based on Plaintiff's investigation to date, non-limiting examples of Apple Accused Products include, but are not limited to, the products within at least the following families: PMB5750, PMB5757, PMB5762, PMB5765, SMARTi5, SMARTi6, SMARTi7, SMARTi8, iPhone 7, iPhone 7 Plus, iPhone 8, iPhone 8 Plus, iPhone X, iPhone XS, iPhone XS Max, iPhone XR, iPhone 11, iPhone 11 Pro, iPhone 11 Pro Max, C1, C1X, N1, C-Series, N-Series, iPhone 16e, iPhone Air, iPhone 17, iPhone 17 Pro, and iPhone 17 Pro Max.

(b)     All subsequent Apple products based on and/or incorporating pertinent portions of any SCPA architecture from any other Apple Accused Product, as well as any other Apple products that include any pertinent feature that is architected in, or operates in, materially the same manner as any other Apple Accused Product;

(c)     All wafers, chips, and packaged chips or components within the foregoing product families;

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

(d) All Apple products hereafter identified as infringing the '177 Patent in Plaintiff's discovery responses or local rule disclosures in this litigation;

(e) All products, whether made by Apple, Intel, or a third party, that comprise, include, or otherwise make use of any Apple Accused Product;

(f) Any other Apple products that infringe any one or more asserted claims of the '177 Patent for analogous reasons to those disclosed by Plaintiff in this litigation for any Apple Accused Product, including without limitation any such prototypes, pre-production or engineering samples, or trial versions made, used or imported into the United States in the course of researching or developing the families identified above or subsequent generations of the same; and

(g) All Apple products that comprise, include, or otherwise make use of any Intel Accused Product.

65. As referenced in this Complaint, the term "**Jointly Accused Products**" includes all Intel Accused Products that Intel made for and/or supplied to Apple, as well as all Apple Accused Products that comprise, include, or make use of any of Intel Accused Product. On information and belief based on Plaintiff's investigation to date, non-limiting examples of Jointly Accused Products include, but are not limited to, the products within at least the following families: PMB5750, PMB5757, PMB5762, PMB5765, SMARTi5, SMARTi6, SMARTi7, SMARTi8, iPhone 7, iPhone 7 Plus, iPhone 8, iPhone 8 Plus, iPhone X, iPhone XS, iPhone XS Max, iPhone XR, iPhone 11, iPhone 11 Pro, and iPhone 11 Pro Max.

66. All Intel Accused Products, Apple Accused Products, and Jointly Accused Products, are referred to herein, individually and collectively, as the "**Accused Products**."

## COUNT I:  INFRINGEMENT OF THE '177 PATENT

67. Plaintiff incorporates all Paragraphs above as though fully set forth herein.

68. The '177 Patent was duly and legally issued on October 1, 2013, and is titled, "All-Digital Switched-Capacitor Radio Frequency Power Amplification."

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

69.     Plaintiff is the assignee of all rights, title, and interest in and to the '177 Patent.

70.     Defendants Intel and Apple have each directly infringed and continue to directly infringe, contributed to and continue to contribute to the infringement of, and/or actively induced and continue to actively induce others to infringe, the '177 Patent in violation of 35 U.S.C. § 271, including by making, using, selling, offering for sale, and/or importing the Accused Products in and/or into the United States.

71.     On information and belief based on Plaintiff's investigation to date, the Accused Products incorporated the '177 Patent's inventions substantially as described in Intel's later-filed '834 Patent, which as discussed above reflected infringing designs copied from the '177 Patent.

72.     Plaintiff below provides example mappings to the claims of the '177 Patent. These mappings are not limiting, and additional mappings may be disclosed per the Court's rules relating to infringement contentions.

73.     The Accused Products infringe at least **<u>Claim 1</u>** of the '177 Patent.  For example, and to the extent the preamble is limiting, the Accused Products include a power amplifier circuit.  For example, the Accused Products embody every limitation of that claim, literally or under the doctrine of equivalents, as set forth below.  The further descriptions below, which are based on publicly available information, are preliminary examples and are non-limiting.

74.     For example, on information and belief based on Plaintiff's investigation to date, the Accused Products include a power amplifier circuit substantially as described in Intel's later-filed '834 Patent (now owned by Apple).  *See, e.g.*:

<u>**Intel's Later-Filed Patent**</u>
**(Now Owned By Apple)**

For example, the bandwidth of ***capacitive RF DAC/switched-capacitor power amplifier*** may be increased by a scalable capacitor cell field with tri-state mode.

'834 Patent (Intel / Apple) at 10:41-42 (emphasis added);

Some examples relate to a reconfigurable ***switched capacitor RF DAC/switched capacitor PA (power amplifier)*** for wide band operation.

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

*Id.* at 29:32-34 (emphasis added);

> **FIG. 4** illustrates an example of **switched-capacitor RF DAC** 400 and an inductance element 190 for coupling the switched-capacitor RF DAC 400 to an antenna element (not illustrated).

*Id.* at 16:1-4 (emphasis added);



FIG. 4

*Id.* at Fig. 4.

Plaintiff further notes that the content in Figure 4 of Intel's later-filed '834 Patent appears to have been copied from Figure 5 of Plaintiff's '177 Patent, with Intel even going so far as to include the highly-specific text of particular circuit element labels verbatim, such as "***Phase***

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 28 -

*Input φ*," "*B₅-B₂*," "*B₅-B₀*," and "*B$_{in}$(A)-Envelope Input*."  *Id.* (emphasis added).  Figure 5 of

Plaintiff's '177 Patent is reproduced below for reference.

### '177 Patent



## Figure 5

'177 Patent (Merle) at Fig. 5.

75.    Further, the power amplifier circuit in the Accused Products comprises a

plurality of stages.  For example, on information and belief based on Plaintiff's investigation to

date, the power amplifier circuit in the Accused Products includes a plurality of stages

substantially as described in Intel's later-filed '834 Patent.  For example, Intel's later-filed '834

Patent describes a power amplifier circuit having a plurality of stages (A), with each stage (A)

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

including, for example, a selection circuit (160 & 170), a switch (180), and a storage element (130-1) as shown in Figure 4 of Intel's later-filed '834 Patent (now owned by Apple). *See, e.g.*:

### Intel's Later-Filed Patent
### (Now Owned By Apple)



'834 Patent (Intel / Apple) at Fig. 4 (emphasis added);

The switched-capacitor RF DAC 400 comprises a ***plurality of capacitive elements 130-1, 130-2, . . . , 130-n***.

*Id.* at 16:5-6 (emphasis added);

The ***selection logic 160*** may select one of the non-overlapping clock signals $\phi_N$ and $\phi_p$ and provides it to a ***switch driver 170***.

*Id.* at 16:20-22 (emphasis added);

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

The **switch driver 170** drives a **switch 180**. The switch 180 switches a **capacitive element 130**.

*Id.* at 16:51-52 (emphasis added).

Plaintiff further notes that the foregoing content in Figure 4 of Intel's later-filed '834 Patent appears to have been copied from Figure 5 of Plaintiff's '177 Patent, with Intel even going so far as to indicate a particular example stage of the plurality of stages by surrounding the stage with a dashed line on the left-hand side of Figure 4, just like in Figure 5 of the '177 Patent, which is reproduced below for reference.

### '177 Patent



'177 Patent (Merle) at Fig. 5 (emphasis added).

76.    Further, in the power amplifier circuit of the Accused Products, each stage comprises a selection circuit configured to output a selection signal. For example, on information and belief based on Plaintiff's investigation to date, the power amplifier circuit of the Accused Products comprises a plurality of stages wherein each stage comprises a selection

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 31 -

circuit configured to output a selection signal substantially as described in Intel's later-filed '834 Patent. For example, Intel's later-filed '834 Patent describes that each stage (A) comprises a selection circuit (160 and 170) that is configured to output a selection signal that is provided to a switch (180), as depicted in Figures 4 and 5 of Intel's later-filed '834 Patent (now owned by Apple). *See, e.g.*:

**Intel's Later-Filed Patent**
**(Now Owned By Apple)**



'834 Patent (Intel / Apple) at Fig. 4 (emphasis added);

Complaint for Patent
Infringement

- 32 -

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600



*Id.* at Fig. 5 (emphasis added);

The **selection logic 160** may select one of the non-overlapping clock signals $\phi_N$ and $\phi_P$ and provides it to a **switch driver 170**.

*Id.* at 16:20-22 (emphasis added);

The **switch driver 170** drives a **switch 180**.  The switch 180 switches a capacitive element 130.

*Id.* at 16:51-52 (emphasis added);

FIG. 5 illustrates a detailed view of section A of the switched-capacitor RF DAC 400 illustrated in FIG. 4.  The **selection logic 160** is comprised of two OR gates 162-1 and 162-2. The clock signal $\phi_N$ is input to OR Gate 162-1 and the clock signal $\phi_P$ is input to OR gate 162-2. Furthermore, the selection logic 160 comprises a NOT gate 161. The NOT gate 161 inverts the control signal $D_{IN}$ and provides it to the OR gates 162-1 and 162-2. Based on the inverted control signal $D_{IN}$, the non-overlapping clock signals $\phi_N$ and $\phi_P$ are provided to driver elements 172-1 and 172-2 of the **switch driver 170**.

*Id.* at 17:12-23 (emphasis added);

The non-overlapping **outputs** of the driver elements 172-1 and 172-2 control the transistors 181, 184 of the **switch 180**.

*Id.* at 17:44-45 (emphasis added).

Plaintiff further notes that the foregoing content in Figures 4 and 5 of Intel's later-filed '834 Patent appears to have been copied from Figures 5 and 6 of Plaintiff's '177 Patent, respectively, which are reproduced below for reference.

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 33 -

**'177 Patent**



'177 Patent (Merle) at Fig. 5 (emphasis added);



*Id.* at Fig. 6 (emphasis added).

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 34 -

77.     Further, in the power amplifier circuit of the Accused Products, each stage comprises a switch configured to (a) receive the selection signal from the selection circuit, (b) select an input signal based on the received selection signal, and (c) output the selected input signal.  For example, on information and belief based on Plaintiff's investigation to date, the power amplifier circuit of the Accused Products comprises a plurality of stages wherein each stage comprises the foregoing elements substantially as described in Intel's later-filed '834 Patent.  For example, Intel's later-filed patent describes that each stage (A) comprises a switch (180) configured to (a) receive the selection signal from the selection circuit (160 and 170), (b) select an input signal (e.g., $2V_{DD}$ or Ground) based on the received selection signal, and (c) output the selected input signal to the capacitive storage element (130-1), as depicted in Figures 4 and 5 of Intel's later-filed '834 Patent (now owned by Apple).  *See, e.g.*:

### Intel's Later-Filed Patent
#### (Now Owned By Apple)



'834 Patent (Intel / Apple) at Fig. 4 (emphasis added);

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600



*Id.* at Fig. 5 (emphasis added);

> The non-overlapping ***outputs*** of the driver elements 172-1 and 172-2 control the transistors 181, 184 of the ***switch 180***. For example, the transistor 181 may be a p-type Metal-Oxide-Semiconductor Field-Effect Transistor (MOSFET) and the transistor 184 may be a n-type MOSFET. The transistor 181 is coupled to a potential $2V_{DD}$ and via another transistor 182 to the capacitive element 130. The other transistor 182 may, e.g., be a p-type MOSFET. The transistor 184 is coupled to a further potential, e.g., ***ground***, and via another transistor 183 to the capacitive element 130. The other transistor 183 may, e.g., be a n-type MOSFET. The gates of the transistors 182 and 183 are coupled to a potential $V_{DD}$, respectively, so that the transistors 182 and 183 are in a conductive state. The transistors 181 and 184 are alternately switched to a conductive state by the non-overlapping clock signals $\phi_N$ and $\phi_P$ provided to the gates of the transistors 181 and 184, respectively. Consequently, the first electrode of the capacitive element 130 is either coupled to $2V_{DD}$ or ***ground***. Hence, the transistors 181 and 184 allow to ***charge or discharge the first electrode of the capacitive element 130*** based on the non-overlapping clock signals $\phi_N$ and $\phi_P$.

*Id.* at 17:44-65 (emphasis added).

Plaintiff further notes that the foregoing content in Figures 4 and 5 of Intel's later-filed '834 Patent appears to have been copied from Figures 5 and 6 of Plaintiff's '177 Patent, respectively, which are reproduced below for reference.

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 36 -

**'177 Patent**



'177 Patent (Merle) at Fig. 5 (emphasis added);



*Id.* at Fig. 6 (emphasis added).

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 37 -

1    78.    Further, in the power amplifier circuit of the Accused Products, each stage

2    comprises a storage element, wherein the storage element has (a) a first terminal coupled to an

3    output of the switch and (b) a second terminal configured to provide an output signal.  For

4    example, on information and belief based on Plaintiff's investigation to date, the power amplifier

5    circuit of the Accused Products comprises a plurality of stages wherein each stage comprises the

6    foregoing elements substantially as described in Intel's later-filed '834 Patent.  For example,

7    Intel's later-filed patent describes that each stage (A) comprises a storage element (130-1) that

8    has (a) a first terminal coupled to an output of the switch (180) and (b) a second terminal

9    configured to provide an output signal (e.g., an output voltage), as depicted in Figures 4 and 5 of

10    Intel's later-filed '834 Patent (now owned by Apple).  *See, e.g.*:

### Intel's Later-Filed Patent
### (Now Owned By Apple)



Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 38 -

'834 Patent (Intel / Apple) at Fig. 4 (emphasis added);



*Id.* at Fig. 5 (emphasis added);

  The switched-capacitor RF DAC 400 comprises a ***plurality of capacitive elements 130-1, 130-2, . . . , 130-n***.

*Id.* at 16:5-6 (emphasis added);

  The switch driver 170 drives a switch 180.  The ***switch 180*** switches a ***capacitive element 130***.

*Id.* at 16:51-52 (emphasis added);

  The non-overlapping outputs of the driver elements 172-1 and 172-2 control the transistors 181, 184 of the ***switch 180***.  For example, the transistor 181 may be a p-type Metal-Oxide-Semiconductor Field-Effect Transistor (MOSFET) and the transistor 184 may be a n-type MOSFET. The transistor 181 is coupled to a potential $2V_{DD}$ and via another transistor 182 to the ***capacitive element 130***. The other transistor 182 may, e.g., be a p-type MOSFET. The transistor 184 is coupled to a further potential, e.g., ground, and via another transistor 183 to the capacitive element 130. The other transistor 183 may, e.g., be a n-type MOSFET. The gates of the transistors 182 and 183 are coupled to a potential $V_{DD}$, respectively, so that the transistors 182 and 183 are in a conductive state.  The transistors 181 and 184 are alternately switched to a conductive state by the non-overlapping clock signals $\phi_N$ and $\phi_P$ provided to the gates of the transistors 181 and 184, respectively.  Consequently, the ***first electrode*** of the ***capacitive element 130*** is either coupled to $2V_{DD}$ or ground.  Hence, the transistors 181 and 184 allow to charge or discharge the first electrode of the capacitive element 130 based on the non-overlapping clock signals $\phi_N$ and $\phi_P$. Accordingly, the ***capacitive element 130*** may provide a corresponding ***output voltage*** at its ***second electrode*** which oscillates with a frequency of the non-overlapping clock signals $\phi_N$ and $\phi_P$, e.g., a fraction of the analog RF transmit signal is provided at the second electrode of the capacitive element 130.

Complaint for Patent
Infringement

- 39 -

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

1    *Id.* at 17:44-18:3 (emphasis added).

2        Plaintiff further notes that the foregoing content in Figures 4 and 5 of Intel's later-filed

3    '834 Patent appears to have been copied from Figures 5 and 6 of Plaintiff's '177 Patent,

4    respectively, which are reproduced below for reference.

5                                **'177 Patent**



18    '177 Patent (Merle) at Fig. 5 (emphasis added);



Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 40 -

*Id.* at Fig. 6 (emphasis added).

79.    Further, the power amplifier circuit in the Accused Products comprises a combination circuit configured to provide a combined output signal by combining the output signal provided at the second terminal of each storage element in the plurality of stages.  For example, on information and belief based on Plaintiff's investigation to date, the power amplifier circuit in the Accused Products includes the foregoing elements substantially as described in Intel's later-filed '834 Patent.  For example, Intel's later-filed patent describes that the power amplifier circuit comprises a combination circuit (e.g., such as a "wire OR" combination circuit or other combination circuit) configured to provide a combined output signal provided at the second terminal of each storage element (130-1 to 130-n) in the plurality of stages (A), as shown in Figure 4 of Intel's later-filed '834 Patent (now owned by Apple).  *See, e.g.*:

### Intel's Later-Filed Patent
**(Now Owned By Apple)**



Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 41 -

'834 Patent (Intel / Apple) at Fig. 4 (emphasis added);

> Accordingly, the **capacitive element 130** may provide a corresponding **output voltage** at its **second electrode** which oscillates with a frequency of the non-overlapping clock signals $\phi_N$ and $\phi_P$, e.g., a fraction of the analog RF transmit signal is provided at the second electrode of the capacitive element 130.

*Id.* at 17:65-18:3 (emphasis added).

> The switch driver 170 drives a switch 180. The switch 180 switches a capacitive element 130. Hence, the phase component of the digital baseband transmit signal may be used to generate an analog **output voltage** signal via the **capacitive element 130. By combining the outputs of the plurality of capacitive elements 130-1, 130-2, … , 130-n, an analog RF transmit signal may be provided based on the digital baseband transmit signal by the switched-capacitor RF DAC 400.**

*Id.* at 16:51-59 (emphasis added).

Plaintiff further notes that the foregoing content in Figure 4 of Intel's later-filed '834 Patent appears to have been copied from Figures 5 of Plaintiff's '177 Patent, which is reproduced below for reference.

### '177 Patent

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 42 -

'177 Patent (Merle) at Fig. 5 (emphasis added);

SCPA 500 is also shown as including ***combination circuit 516*** and bandpass matching network 518.

*Id.* at 8:8-9 (emphasis added); *see also, e.g.*:



**Figure 1**

*Id.* at Fig. 1 (emphasis added);

***Combination circuit 116*** may be configured to provide a combined output signal by combining the output signal provided at second terminal 106B of each storage element 106 in plurality of stages 102. For example, ***combination circuit 116*** may be configured to couple the respective second terminal 106B of each storage element 106 in each of the stages 102 so as to "***wire OR***" the respective output signals of the stages 102 together into a single combined output signal. Of course, ***more complex combination circuitry may be used*** to combine the respective output signals of the stages 102 as well.

*Id.* at 5:61-6:3 (emphasis added).

80.    Accordingly, as illustrated above, the Accused Products comprise and practice all elements of, and therefore infringe, at least Claim 1 of the '177 Patent.

81.    The Accused Products further infringe at least **Claim 2** of the '177 Patent, which is a dependent claim that depends upon Claim 1. For example, the Accused Products embody

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 43 -

every limitation of that claim, literally or under the doctrine of equivalents, as set forth in the preliminary, non-limiting example below.

82.    For example, the Accused Products include the power amplifier circuit of Claim 1, wherein the storage element is a capacitor.  For example, on information and belief based on Plaintiff's investigation to date, the Accused Products include a power amplifier circuit substantially as described in Intel's later-filed '834 Patent (now owned by Apple), which describes a power amplifier circuit implemented in CMOS technology.  *See, e.g.*:

**Intel's Later-Filed Patent**
**(Now Owned By Apple)**

The switched-capacitor RF DAC 400 may, e.g., be implemented in a ***Complementary Metal-Oxide-Semiconductor (CMOS) technology***.

'834 Patent (Intel / Apple) at 18:31-33 (emphasis added).

83.    Accordingly, as illustrated above, the Accused Products comprise and practice all elements of, and therefore infringe, at least Claim 2 of the '177 Patent.

84.    The Accused Products further infringe at least **Claim 3** of the '177 Patent, which is a dependent claim that depends upon Claim 1.  For example, the Accused Products embody every limitation of that claim, literally or under the doctrine of equivalents, as set forth in the preliminary, non-limiting example below.

85.    For example, the Accused Products include the power amplifier circuit of Claim 1, wherein the storage element is a capacitor.  For example, on information and belief based on Plaintiff's investigation to date, the Accused Products include a power amplifier circuit substantially as described in Intel's later-filed '834 Patent (now owned by Apple), which describes the plurality of storage elements (130-1 to 130-n) as being capacitors.  *See, e.g.*:

**Intel's Later-Filed Patent**
**(Now Owned By Apple)**

The switched-***capacitor*** RF DAC 400 comprises a plurality of ***capacitive elements 130-1, 130-2, . . . , 130-n***.

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

'834 Patent (Intel / Apple) at 16:5-6 (emphasis added). These capacitors are shown in Figures 4

and 5 of Intel's later-filed patent, which use the circuit symbol of two parallel lines to indicate a

capacitor:



*Id.* at Fig. 4 (emphasis added);

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 45 -



*Id.* at Fig. 5 (emphasis added).

Plaintiff further notes that the foregoing content in Figures 4 and 5 of Intel's later-filed '834 Patent appears to have been copied from Figures 5 and 6 of Plaintiff's '177 Patent, respectively, which are reproduced below for reference.

## '177 Patent



Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 46 -

'177 Patent (Merle) at Fig. 5 (emphasis added);



*Id.* at Fig. 6 (emphasis added);

> Additionally, example stage 604 includes a **storage element**, which is shown as **capacitor 606**.

*Id.* at 8:49-50 (emphasis added).

86.    Accordingly, as illustrated above, the Accused Products comprise and practice all elements of, and therefore infringe, at least Claim 3 of the '177 Patent.

87.    The Accused Products further infringe at least **<u>Claim 4</u>** of the '177 Patent, which is a dependent claim that depends upon Claim 1.  For example, the Accused Products embody every limitation of that claim, literally or under the doctrine of equivalents, as set forth in the preliminary, non-limiting example below.

88.    For example, the Accused Products include the power amplifier circuit of Claim 1, wherein the selection circuit is further configured to receive amplitude information corresponding to a reference signal, wherein the selection signal is based, at least in part, on the amplitude information.  For example, on information and belief based on Plaintiff's investigation to date, the power amplifier circuit in the Accused Products includes the foregoing elements substantially as described in Intel's later-filed '834 Patent (now owned by Apple).  For example, Intel's later-filed patent describes that, in the power amplifier circuit, each stage's selection circuit (160 and 170) is configured to receive amplitude information (e.g., a bit or bits from $B_{in}(A)$ provided to each stage as the $D_{IN}$ selection signal) corresponding to a reference

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 47 -

signal (e.g., as indicated by at least $B_{in}(A)$--Envelope Input), wherein the selection signal is based, at least in part, on the amplitude information (e.g., $D_{IN}$ is based at least in part on the amplitude information provided in $B_{in}(A)$). *See, e.g.*:

**Intel's Later-Filed Patent**
**(Now Owned By Apple)**



'834 Patent (Intel / Apple) at Fig. 4 (emphasis added);

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 48 -



*Id.* at Fig. 5 (emphasis added);

The switched-capacitor RF DAC 400 may further comprise a binary-to-thermometer decoder 140. A ***digital binary code word $B_{in}(A)$*** may be input to the binary-to-thermometer decoder 140. The digital binary code word $B_{in}(A)$ may represent the ***amplitude component of the digital baseband transmit signal***. The binary-to-thermometer decoder 140 may provide a ***logic control signal $D_{in}$ based on information represented by the digital to binary code word $B_{in}(A)$***. For example, the information may be derived from ***a number of Most Significant Bits (MSB) of the digital binary code word $B_{in}(A)$***.

*Id.* at 16:23-33 (emphasis added).

Plaintiff further notes that the foregoing content in Figures 4 and 5 of Intel's later-filed '834 Patent appears to have been copied from Figures 5 and 6 of Plaintiff's '177 Patent, respectively, which are reproduced below for reference.

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 49 -

**'177 Patent**



'177 Patent (Merle) at Fig. 5 (emphasis added);

Complaint for Patent
Infringement

- 50 -

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

*Id.* at Fig. 6 (emphasis added); *see also, e.g.*:

> Binary-to-thermometer-decoder circuitry 522B may be configured to convert a ***binary representation $B_{in}(A)$ of the amplitude of the envelope*** associated with an amplitude modulation of the reference signal into a ***code word that is used by each stage***. As described above, ultimately, the voltage at which a given switch operates may be based on such a codeword, and therefore may ultimately be ***based on the amplitude of the envelope of the reference signal***.

*Id.* at 8:36-43 (emphasis added);

> As a general matter, example stage 604 is configured to receive, and operate, according to non-overlapping clock signals $f_N$ and $f_P$. Additionally, example stage 604 is configured to receive an ***input data bit $D_{IN}$***. Each of $f_N$, $f_P$, and $D_{IN}$ may be provided by reference circuitry, as discussed above. ***The input data bit $D_{IN}$ is one bit from the digital code word $B_{in}(A)$ associated with the amplitude modulation of the reference signal to be amplified***.

*Id.* at 8:53-60 (emphasis added).

89.     Accordingly, as illustrated above, the Accused Products comprise and practice all elements of, and therefore infringe, at least Claim 4 of the '177 Patent.

90.     The Accused Products further infringe at least **Claim 5** of the '177 Patent, which is a dependent claim that depends upon Claim 4. For example, the Accused Products embody every limitation of that claim, literally or under the doctrine of equivalents, as set forth in the preliminary, non-limiting example below.

91.     For example, the Accused Products include the power amplifier circuit of Claim 4, further comprising a reference circuit that is coupled to the selection circuit and configured to receive the reference signal. For example, on information and belief based on Plaintiff's investigation to date, the power amplifier circuit in the Accused Products includes the foregoing elements substantially as described in Intel's later-filed '834 Patent (now owned by Apple). For example, Intel's later-filed patent describes that the power amplifier circuit includes a reference circuit (e.g., including, for example, at least clock generator 150 and binary-to-thermometer decoder 140) that is coupled to each stage's selection circuit (160 and 170) and configured to receive the reference signal (e.g., as indicated by at least Phase Input--$\phi$ and $B_{in}(A)$--Envelope Input). *See, e.g.*:

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 51 -

**Intel's Later-Filed Patent**
**(Now Owned By Apple)**



'834 Patent (Intel / Apple) at Fig. 4 (emphasis added);

The switched-capacitor RF DAC 400 comprises a plurality of capacitive elements 130-1, 103-2, . . . , 130-*n*. A first electrode of the plurality of capacitive elements 130-1, 130-2, . . . , 130-*n* is controlled based on a ***phase component (PM)*** and a ***amplitude component (AM)*** of a ***digital base-band transmit signal***.

The switched-capacitor RF DAC 400 may comprises a clock generator 150. The ***clock generator 150*** may generate non-overlapping clock signals $\phi_N$ and $\phi_p$ related to a ***phase signal $\phi$*** provided to the clock generator 150. For example, the phase signal $\phi$ a may be the ***phase component of the digital baseband transmit signal*** which is modulated with a RF carrier signal. The clock generator 150 may, e.g., comprise a Local Oscillator (LO) which is controlled by the phase signal $\phi$. The non-overlapping clock signals $\phi_N$ and $\phi_p$ are ***provided to a selection logic 160***. The selection logic 160 may select one of the non-overlapping clock signals $\phi_N$ and $\phi_p$ and ***provides it to a switch driver 170***.

*Id.* at 16:5-22 (emphasis added);

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

> The switched-capacitor RF DAC 400 may further comprise a ***binary-to-thermometer decoder 140***. A ***digital binary code word $B_{in}(A)$*** may be input to the binary-to-thermometer decoder 140. The digital binary code word $B_{in}(A)$ may represent the ***amplitude component of the digital baseband transmit signal***. The binary-to-thermometer decoder 140 may provide a logic control signal $D_{in}$ based on information represented by the digital to binary code word $B_{in}(A)$. For example, the information may be derived from a number of Most Significant Bits (MSB) of the digital binary code word $B_{in}(A)$.

*Id.* at 16:23-33 (emphasis added).

Plaintiff further notes that the foregoing content in Figure 4 of Intel's later-filed '834 Patent appears to have been copied from Figure 5 of Plaintiff's '177 Patent, which is reproduced below for reference.

**'177 Patent**



'177 Patent (Merle) at Fig. 5 (emphasis added); *see also, e.g.*:

> Further, SCPA 500 shows ***reference circuitry*** such as ***non-overlapping clock circuitry 522A*** and ***binary-to-thermometer-decoder circuitry 522B***. Such reference circuitry may include additional elements as well. Such reference

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 53 -

circuitry may include additional elements as well.  Communication link 514 may couple SCPA 100 to additional circuitry, such as the reference circuitry.

The reference circuitry, such as non-overlapping-clock circuitry 522A and/or binary-to-thermometer-decoder circuitry 522B may be configured to perform various functions.  As shown, **non-overlapping-clock circuitry 522A** may be configured to receive a **polar representation (e.g., phase information) of the reference signal**.  The phase information may be upconverted to the carrier frequency of the reference signal and input as a phase input 510, $\phi$, to non-overlapping-clock circuitry 522A.  As a result, the selection circuit 514, and therefore the stages 502 more generally, will be driven at the carrier frequency of the reference signal.  Phase input 510 may then be converted to a differential, non-overlapping, clock signal that is used as the sampling clock in each of stages 102.  The non-overlapping clock signals are shown as $f_N$ 524 and $f_P$ 526, output from non-overlapping-clock circuitry 522A.

*Id.* at 8:9-29 (emphasis added);

> **Binary-to-thermometer-decoder circuitry 522B** may be configured to convert a binary representation $B_{in}(A)$ of the **amplitude of the envelope associated with an amplitude modulation of the reference signal** into a code word that is used by each stage.

*Id.* at 8:36-40 (emphasis added).

92.    Accordingly, as illustrated above, the Accused Products comprise and practice all elements of, and therefore infringe, at least Claim 5 of the '177 Patent.

93.    The Accused Products further infringe at least **<u>Claim 6</u>** of the '177 Patent, which is a dependent claim that depends upon Claim 5.  For example, the Accused Products embody every limitation of that claim, literally or under the doctrine of equivalents, as set forth in the preliminary, non-limiting example below.

94.    For example, the Accused Products include the power amplifier circuit of Claim 5, wherein the reference circuit is configured to convert a phase of the reference signal into non-overlapping clock signals.  For example, on information and belief based on Plaintiff's investigation to date, the power amplifier circuit in the Accused Products includes the foregoing elements substantially as described in Intel's later-filed '834 Patent (now owned by Apple).  For example, Intel's later-filed patent describes that the power amplifier circuit includes a reference circuit (e.g., at least clock generator 150 and binary-to-thermometer decoder 140) that is

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 54 -

configured to convert a phase of the reference signal (e.g., Phase Input--φ) into non-overlapping clock signals (e.g., φ_N and φ_P).  *See, e.g.*:

### Intel's Later-Filed Patent
#### (Now Owned By Apple)



'834 Patent (Intel / Apple) at Fig. 4 (emphasis added); *see also, e.g.*:

> The switched-capacitor RF DAC 400 comprises a plurality of capacitive elements 130-1, 103-2, . . . , 130-*n*.  A first electrode of the plurality of capacitive elements 130-1, 130-2, . . . , 130-*n* is controlled based on a ***phase component (PM)*** and a amplitude component (AM) of a ***digital base-band transmit signal***.

> The switched-capacitor RF DAC 400 may comprises a clock generator 150. The ***clock generator 150*** may generate ***non-overlapping clock signals φ_N and φ_P*** related to a ***phase signal φ*** provided to the clock generator 150. For example, the phase signal φ a may be the ***phase component of the digital baseband transmit signal*** which is modulated with a RF carrier signal. The clock generator 150 may, e.g., comprise a Local Oscillator (LO) which is controlled by the phase

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 55 -

signal φ. The **non-overlapping clock signals $\phi_N$ and $\phi_p$** are provided to a selection logic 160. The selection logic 160 may select one of the non-overlapping clock signals $\phi_N$ and $\phi_p$ and provides it to a switch driver 170.

*Id.* at 16:5-22 (emphasis added).

Plaintiff further notes that the foregoing content in Figure 4 of Intel's later-filed '834 Patent appears to have been copied from Figure 5 of Plaintiff's '177 Patent, which is reproduced below for reference.

### '177 Patent



'177 Patent (Merle) at Fig. 5 (emphasis added); *see also, e.g.*:

Further, SCPA 500 shows **reference circuitry** such as **non-overlapping clock circuitry 522A** and binary-to-thermometer-decoder circuitry 522B. Such reference circuitry may include additional elements as well. Such reference circuitry may include additional elements as well. Communication link 514 may couple SCPA 100 to additional circuitry, such as the reference circuitry.

The reference circuitry, such as non-overlapping-clock circuitry 522A and/or binary-to-thermometer-decoder circuitry 522B may be configured to perform various functions. As shown, **non-overlapping-clock circuitry 522A** may be configured to receive a **polar representation (e.g., phase information) of the reference signal**. The phase information may be upconverted to the carrier

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 56 -

frequency of the reference signal and input as a **phase input 510, ϕ**, to non-overlapping-clock circuitry 522A. As a result, the selection circuit 514, and therefore the stages 502 more generally, will be driven at the carrier frequency of the reference signal.  Phase input 510 may then be converted to a differential, **non-overlapping, clock signal** that is used as the sampling clock in each of stages 102.  The **non-overlapping clock signals** are shown as $f_N$ **524 and** $f_P$ **526**, output from non-overlapping-clock circuitry 522A.

*Id.* at 8:9-29 (emphasis added).

95.    Accordingly, as illustrated above, the Accused Products comprise and practice all elements of, and therefore infringe, at least Claim 6 of the '177 Patent.

96.    The Accused Products further infringe at least **<u>Claim 7</u>** of the '177 Patent, which is a dependent claim that depends upon Claim 4.  For example, the Accused Products embody every limitation of that claim, literally or under the doctrine of equivalents, as set forth in the preliminary, non-limiting example below.

97.    For example, the Accused Products include the power amplifier circuit of Claim 4, wherein the input signal comprises at least one of ground, a first voltage, or a second voltage.  For example, on information and belief based on Plaintiff's investigation to date, the power amplifier circuit in the Accused Products includes the foregoing elements substantially as described in Intel's later-filed '834 Patent (now owned by Apple).  For example, Intel's later-filed patent describes that, in the power amplifier circuit, the input signal to each switch (180) may comprise at least one of ground, a first voltage ($2V_{DD}$), or a second voltage ($V_{DD}$). *See, e.g.*:

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 57 -

**Intel's Later-Filed Patent**
**(Now Owned By Apple)**



'834 Patent (Intel / Apple) at Fig. 5 (emphasis added); *see also, e.g.*:

> The non-overlapping outputs of the driver elements 172-1 and 172-2 control the transistors 181, 184 of the **switch 180**. For example, the transistor 181 may be a p-type Metal-Oxide-Semiconductor Field-Effect Transistor (MOSFET) and the transistor 184 may be a n-type MOSFET. The transistor 181 is coupled to a **potential $2V_{DD}$** and via another transistor 182 to the capacitive element 130. The other transistor 182 may, e.g., be a p-type MOSFET. The transistor 184 is coupled to a **further potential, e.g., ground**, and via another transistor 183 to the capacitive element 130. The other transistor 183 may, e.g., be a n-type MOSFET. The gates of the transistors 182 and 183 are coupled to a **potential $V_{DD}$** respectively, so that the transistors 182 and 183 are alternately switched to a conductive stage by the non-overlapping clock signals $\phi_N$ and $\phi_P$ provided to the gates of transistors 181 and 184, respectively.

*Id.* at 17:44-60 (emphasis added).

Plaintiff further notes that the foregoing content in Figure 5 of Intel's later-filed '834 Patent appears to have been copied from Figure 6 of Plaintiff's '177 Patent, which is reproduced below for reference.

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 58 -

**'177 Patent**



'177 Patent (Merle) at Fig. 6 (emphasis added); *see also, e.g.*:

> The example architecture shown in FIG. 6 enables example stage 604 to operate over a ***supply voltage range of 0 to 2V_DD***, while at the same time minimizing the impact of voltage stress on any individual CMOS device contained in stage 604. The NMOS and PMOS transistor switches 608A-608D driving capacitor 606 are placed together in a complementary pair and sized to provide the necessary drive current to charge and discharge capacitor 606. PMOS transistor 608A operates from a supply voltage range of $V_{DD}$-2$V_{DD}$, while NMOS transistor 608D operates from ***0-V_DD***. Accordingly, a level shifting circuit may boost the voltage range of the signal after logical OR 610C operation, which is in the signal path of PMOS transistor 608A. The level-shifting circuit may also receive part of the digital code word B$_{in}$(A) in order to operate.
> Thus, in accordance with an example embodiment, a single stage may produce ***one of three output voltages*** at a given time: ***0, V_DD, or 2V_DD***.

*Id.* at 9:15-29 (emphasis added).

98.    Accordingly, as illustrated above, the Accused Products comprise and practice all elements of, and therefore infringe, at least Claim 7 of the '177 Patent.

99.    The Accused Products further infringe at least **Claim 8** of the '177 Patent, which is a dependent claim that depends upon Claim 1. For example, the Accused Products embody every limitation of that claim, literally or under the doctrine of equivalents, as set forth in the preliminary, non-limiting example below.

100.    For example, the Accused Products include the power amplifier circuit of Claim 1, wherein the combined output signal comprises an approximate square wave having the

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 59 -

same fundamental frequency as the reference signal. For example, on information and belief based on Plaintiff's investigation to date, the power amplifier circuit in the Accused Products practices the foregoing elements substantially as described in Intel's later-filed '834 Patent (now owned by Apple). For example, Intel's later-filed patent indicates that, in the power amplifier circuit, the combined output signal provided by the combination circuit (which combines the outputs of storage elements 130-1 to 130-n) will comprise an approximate square wave having the same fundamental frequency as the reference signal (e.g., as indicated by Phase Input--$\phi$). For example, the frequency of the reference signal (e.g., as indicated by Phase Input--$\phi$) is converted into non-overlapping clock signals ($\phi_N$ and $\phi_P$) that drive the output of the combination circuit in a switched manner, thereby resulting in the output of an approximate square wave having the same fundamental frequency as the reference signal. *See, e.g.*:

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

**Intel's Later-Filed Patent**
**(Now Owned By Apple)**



'834 Patent (Intel / Apple) at Fig. 4 (emphasis added);



*Id.* at Fig. 5 (emphasis added); *see also, e.g.*:

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

The switched-capacitor RF DAC 400 comprises a plurality of capacitive elements 130-1, 103-2, . . . , 130-$n$. A first electrode of the plurality of capacitive elements 130-1, 130-2, . . . , 130-$n$ is controlled based on a ***phase component (PM)*** and a amplitude component (AM) of a ***digital baseband transmit signal***.

The switched-capacitor RF DAC 400 may comprises a ***clock generator 150***. The clock generator 150 may generate ***non-overlapping clock signals*** $\phi_N$ ***and*** $\phi_p$ related to a ***phase signal*** $\phi$ provided to the clock generator 150. For example, the phase signal $\phi$ a may be the ***phase component of the digital base-band transmit signal*** which is modulated with a RF carrier signal. The clock generator 150 may, e.g., comprise a ***Local Oscillator (LO) which is controlled by the phase signal*** $\phi$. The ***non-overlapping clock signals*** $\phi_N$ ***and*** $\phi_p$ are provided to a selection logic 160. The selection logic 160 may select one of the non-overlapping clock signals $\phi_N$ and $\phi_p$ and provides it to a switch driver 170.

*Id.* at 16:5-22 (emphasis added);

The transistors 181 and 184 are ***alternatingly switched*** to a conductive state by the ***non-overlapping clock signals*** $\phi_N$ ***and*** $\phi_p$ provided to the gates of the transistors 181 and 184, respectively. Consequently, the first electrode of the capacitive element 130 is either coupled to 2V$_{DD}$ or ground. Hence, the transistors 181 and 184 allow to ***charge or discharge the first electrode of the capacitive element 130 based on the non-overlapping clock signals*** $\phi_N$ ***and*** $\phi_p$. Accordingly, the capacitive element 130 may provide a corresponding output voltage at its second electrode which ***oscillates with a frequency of the non-overlapping clock signals*** $\phi_N$ ***and*** $\phi_p$, ***e.g., a fraction of the analog RF transmit signal*** is provided at the second electrode of the capacitive element 130.

*Id.* at 17:44-18:3 (emphasis added).

Plaintiff further notes that the foregoing content in Figures 4 and 5 of Intel's later-filed '834 Patent appears to have been copied from Figures 5 and 6 of Plaintiff's '177 Patent, respectively, which are reproduced below for reference.

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 62 -

**'177 Patent**



'177 Patent (Merle) at Fig. 5 (emphasis added);



*Id.* at Fig. 6 (emphasis added); *see also, e.g.*:

As shown, ***non-overlapping-clock circuitry 522A*** may be configured to receive a ***polar representation (e.g., phase information) of the reference signal***. The phase information may be upconverted to the carrier frequency of the reference signal and input as a ***phase input 510, ϕ***, to non-overlapping-clock circuitry 522A. As a result, the selection circuit 514, and therefore the stages 502 more generally, will be ***driven at the carrier frequency of the reference signal***. Phase

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 63 -

input 510 may then be converted to a differential, non-overlapping, clock signal that is used as the sampling clock in each of stages 102. The **non-overlapping clock signals** are shown as $f_N$ **524 and** $f_P$ **526**, output from non-overlapping-clock circuitry 522A.

*Id.* at 8:17-29 (emphasis added);

And at step 910, the SCPA combines the respective output signals provided at the second terminal of each storage element to create a combined output signal. That is, the output of each storage device may be combined to form an output signal. The output signal may be a **square wave** due to the **switched nature of the input signal** provided to each storage device.

*Id.* at 11:54-60 (emphasis added);



*Id.* at Fig. 7 (cropped, and emphasis added).

101.    Accordingly, as illustrated above, the Accused Products comprise and practice all elements of, and therefore infringe, at least Claim 8 of the '177 Patent.

102.    The Accused Products further infringe at least **Claim 9** of the '177 Patent, which is a dependent claim that depends upon Claim 1. For example, the Accused Products embody every limitation of that claim, literally or under the doctrine of equivalents, as set forth in the preliminary, non-limiting example below.

103.    For example, the Accused Products include the power amplifier circuit of Claim 1, wherein the combination circuit is further configured to provide an amplitude of the combined output signal, the amplitude being proportional to the number of stages that are providing an output to the combination circuit at a given time. For example, on information and

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

belief based on Plaintiff's investigation to date, the power amplifier circuit in the Accused Products practices the foregoing elements substantially as described in Intel's later-filed '834 Patent (now owned by Apple).  For example, Intel's later-filed patent describes that, in the power amplifier circuit, the combined output signal provided by the combination circuit (e.g., which combines the outputs of storage elements 130-1 to 130-n) is further configured to provide an amplitude of the combined output signal, the amplitude being proportional to the number of stages (A) that are providing an output (e.g., a 2V$_{DD}$, V$_{DD}$, or ground output) to the combination circuit at a given time. *See, e.g.*:



'834 Patent (Intel / Apple) at Fig. 4 (colored annotations and emphasis added);

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 65 -

*Id.* at Fig. 5 (colored annotations and emphasis added); *see also, e.g.*:

A **number of digital-to-analog converter cells** providing constantly the first voltage or the second voltage to the first electrodes of the respective capacitive element during the predefined time interval **may be selected based on the digital amplitude control signal**.

Selecting the **number of digital-to-analog converter cells** providing alternatingly the first and the second voltage to the first electrode and selecting number of digital-to-analog converter cells providing constantly the first voltage or the second voltage to the first electrode **may allow to adjust the output voltage provided at the common output node** of the digital-to-analog converter circuit.

*Id.* at 9:12-15 (emphasis added).

For example, a **number of digital-to-analog converter cells** providing constantly the third voltage to the first electrode may be selected based on a frequency of the oscillator signal (e.g., corresponding to a currently used carrier frequency). Accordingly, the **total capacitance of the digital-to-analog converter circuit** may be adjusted based on the frequency of the oscillator signal. For example, $C_{tot}$ in equation (1) may not be constant, but **may vary with the number of digital-to-analog converter cells** providing constantly the third voltage to the first electrode.

*Id.* at 9:35-44 (emphasis added).

Plaintiff further notes that the foregoing content in Figures 4 and 5 of Intel's later-filed '834 Patent appears to have been copied from Figures 5 and 6 of Plaintiff's '177 Patent, respectively, which are reproduced below for reference.

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 66 -

**'177 Patent**



'177 Patent (Merle) at Fig. 5 (colored annotations and emphasis added);

*Id.* at Fig. 6 (colored annotations and emphasis added).

104.    Accordingly, as illustrated above, the Accused Products comprise and practice all elements of, and therefore infringe, at least Claim 9 of the '177 Patent.

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

105.    The Accused Products further infringe at least **Claim 10** of the '177 Patent, which is a dependent claim that depends upon Claim 1.  For example, the Accused Products embody every limitation of that claim, literally or under the doctrine of equivalents, as set forth in the preliminary, non-limiting example below.

106.    For example, the Accused Products include the power amplifier circuit of Claim 1, further comprising a bandpass matching circuit configured to (a) receive the combined output signal and (b) remove at least one frequency component of the combined output signal, and (c) substantially match an output impedance of the combination circuit to a subsequent input impedance.  For example, on information and belief based on Plaintiff's investigation to date, the power amplifier circuit in the Accused Products practices the foregoing elements substantially as described in Intel's later-filed '834 Patent (now owned by Apple).  For example, Intel's later-filed patent describes that the power amplifier circuit further comprises a bandpass matching circuit (190) that (a) receives the combined output signal from the combination circuit (e.g., the combined outputs of storage elements 130-1 to 130-n), (b) removes at least one frequency component of the combined output signal (e.g., via a bandpass filter such as, for example, a filter comprising capacitive element 191 and two inductive elements 192 and 193), and (c) substantially matches an output impedance of the combination circuit (e.g., output impedance of the combined stages) to a subsequent input impedance (e.g., to the impedance of a coupled antenna).  *See, e.g.*:

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 68 -

**Intel's Later-Filed Patent**
**(Now Owned By Apple)**



'834 Patent (Intel / Apple) at Fig. 4 (emphasis added); *see also, e.g.*:

> The analog RF transmit signal may be provided to the ***inductance element 190***. The inductance element 190 may ensure that an ***accurate or optimal inductance is presented to the output terminal*** of the switched-capacitor RF DAC 400. The inductance element 190 may increase an overall efficiency of a RF transmitter since a power transfer from the switched-capacitor RF DAC 400 ***to an antenna element*** may maximized due to minimized signal reflection. For example, the ***inductance element 190*** may be an inductance ***matching circuit***, which comprises, e.g., a ***capacitive element 191*** and ***two inductive elements 192, 193***. The inductance of the inductance element 190 ***may be adjusted to an overall capacitance of the switched-capacitor RF DAC 400***. In particular, the inductance of the inductance element 190 may be adjustable over a defined range.

*Id.* at 16:60-17:7 (emphasis added); *see also, e.g.*:

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

Line 610 in FIG. 3 illustrates an example of a relation between an ***optimum inductance*** presented by a ***matching circuit*** to an example of a digital-to-analog converter circuit and a frequency of the voltage signal output by the example of a digital-to-analog converter circuit.

*Id.* at 14:64-15:1 (emphasis added).

The abscissa denotes the frequency of the oscillator signal. A ***frequency range from 0 GHz to 1 GHz, e.g., low-band frequencies***, is illustrated as example. The ordinate denotes the ***optimum impedance*** presented by a ***matching network*** coupled to the common output node of the digital-to-analog converter circuit in order to minimize signal reflection. Hence, power transfer from the digital-to-analog converter circuit ***to a coupled antenna*** element may be maximized.

*Id.* at 15:22-15:31 (emphasis added).

Plaintiff further notes that the foregoing content in Figure 4 of Intel's later-filed '834 Patent appears to have been copied from Figure 5 of Plaintiff's '177 Patent, which is reproduced below for reference.

### '177 Patent



'177 Patent (Merle) at Fig. 5 (emphasis added).

107.    Accordingly, as illustrated above, the Accused Products comprise and practice all elements of, and therefore infringe, at least Claim 10 of the '177 Patent.

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 70 -

108.     Both Defendants have also directly infringed, and continue to directly infringe, **Claims 11 to 20** of the '177 Patent, literally or under the doctrine of equivalents, for the same or substantially similar reasons to those provided above with respect to Claims 1 to 10.  Plaintiff hereby incorporates by reference Paragraphs 73 to 107 herein.

109.     Accordingly, as illustrated above, Defendants Intel and Apple each directly infringe one or more claims (and indeed, all claims) of the '177 Patent.  Each Defendant makes, uses, sells, offers for sale, and/or imports, in this District and/or elsewhere in the United States, the Accused Products and thus directly infringes the '177 Patent in violation of 35 U.S.C. § 271(a).

110.     Both Defendants have also each indirectly infringed, and continue to indirectly infringe, the '177 Patent, under 35 U.S.C. § 271(b), including at least by inducing infringement by others, such as Defendants' customers and end-users, in this District and elsewhere in the United States, to use the Accused Products in manners that infringe the '177 Patent.   For example, Defendants' customers and end-users directly infringe via their use of the Accused Products.  Defendants induce such direct infringement through their affirmative acts of making, using, selling, offering to sell, and/or importing the Accused Products, as well as by advertising the Accused Products and providing instructions, documentation, and other information to their customers and end-users to encourage and teach them how to use the Accused Products, including but not limited to by Defendants providing technical support, marketing materials, product manuals, advertisements, and other product documentation.  Defendants perform these affirmative acts with knowledge of the '177 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '177 Patent.

111.     Both Defendants have also each indirectly infringed, and continue to indirectly infringe, the '177 Patent, under 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as Defendant's customers and end-users, in this District and elsewhere in the United States.  Defendants' affirmative acts of selling and offering to sell the

Complaint for Patent
Infringement

- 71 -

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

Accused Products in this District and elsewhere in the United States, and causing the Accused Products to be manufactured, used, sold, and offered for sale, contribute to Defendants' customers and end-users using the Accused Products, such that the '177 Patent is directly infringed.  The accused components in the Accused Products are material to the inventions claimed in the '177 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendants to be especially made or adapted for use in the infringement of the '177 Patent.  Defendants perform these affirmative acts with knowledge of the '177 Patent and with the intent, or willful blindness, that they cause direct infringement of the '177 Patent.

112.    Both Defendants have also each infringed, and continue to infringe, the '177 Patent, under 35 U.S.C. § 271(f)(1), including by supplying or causing to be supplied in or from the United States all or a substantial portion of the components of the Accused Products, uncombined in whole or in part, in such a manner as to actively induce their combination outside the United States in a manner that would infringe the '177 Patent if such combination occurred within the United States.  Defendants have likewise infringed, and continue to infringe, the '177 Patent, under 35 U.S.C. § 271(f)(2), including by supplying or causing to be supplied in or from the United States components of the Accused Products that are especially made or especially adapted for infringement of the '177 Patent.  The accused components in the Accused Products are material to the inventions claimed in the '177 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendants to be especially made or adapted for use in the infringement of the '177 Patent. Defendants perform these affirmative acts with knowledge of the '177 Patent and with the intent, or willful blindness, that they cause direct infringement of the '177 Patent.

113.    Defendants' infringement of the '177 Patent has been and continues to be willful. Plaintiff hereby incorporates by reference Paragraphs 25 through 62 above regarding Defendants' willful infringement as though fully set forth herein.

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 72 -

1

**DAMAGES**

2      114.    Plaintiff has suffered actual and consequential damages as a result of Defendants'

3  acts of infringement.  Plaintiff seeks recovery of damages to the fullest extent permitted by law.

4                                    **DEMAND FOR JURY TRIAL**

5      115.    Plaintiff hereby demands a jury trial for all issues so triable.

6                                    **PRAYER FOR RELIEF**

7          WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in

8  Plaintiff's favor ordering, finding, declaring, and/or awarding relief as follows:

9          A.      that Defendants infringe the '177 Patent;

10         B.      an award or awards of damages resulting from Defendants' acts of infringement

11  in accordance with 35 U.S.C. § 284;

12         C.      that Defendants' infringement of the '177 Patent has been willful;

13         D.      enhanced damages pursuant to 35 U.S.C. § 284;

14         E.      that this is an exceptional case and awarding Plaintiff its reasonable attorneys'

15  fees pursuant to 35 U.S.C. § 285;

16         F.      an accounting for acts of infringement and supplemental damages for

17  infringement and/or damages not presented at trial, including, without limitation, pre-judgment

18  and post-judgment interest;

19         G.      all equitable relief the Court deems just and proper; and

20         H.      such other relief which may be requested and to which the Plaintiff is entitled.

21

22

23

24

25

26

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

1 | DATED:  September 19, 2025

Respectfully submitted,

*/s/  Steven W. Fogg*

Steven W. Fogg
Washington State Bar No. 23528
sfogg@corrcronin.com
**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, WA 98104-1001

Morgan Chu
California State Bar No. 70446
(*pro hac vice* forthcoming)
mchu@irell.com
Benjamin W. Hattenbach
California State Bar No. 186455
(*pro hac vice* forthcoming)
bhattenbach@irell.com
Christopher Abernethy
California State Bar No. 275986
(*pro hac vice* forthcoming)
cabernethy@irell.com
Erick Roger Franklund
California State Bar No. 348400
(*pro hac vice* forthcoming)
efranklund@irell.com
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
Tel:  (310) 277-1010

***Attorneys for Plaintiff***
***Merle Innovations, Inc.***

Complaint for Patent
Infringement

Corr Cronin LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001
(206) 625-8600

- 74 -